## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### DINSMORE V. DINSMORE.

#### November 18, 1920.

1. DIVORCE—*Desertion—Sufficiency of Evidence—Case at Bar.*—In the instant case it appeared from the uncontradicted evidence that the husband was drunken, worthless, and without employment during a period that preceded his abandonment of his wife; that he failed to contribute to the suport of his wife and children during that period; that since the date of abandonment he had not returned, cohabited, communicated with his wife, or contributed to her support; that when he left he stated that he "'did not intend to support or live any longer with his wife;" that the conduct of the wife afforded no ground, or execuse, for the husband's action; and that the abandonment had continued for ten or twelve years.

   *Held:* That these facts established the charge of wilful desertion, and entitled the wife to a divorce *a vinculo matrimonii,* and the custody of the children.

2. DIVORCE—*Evidence—Collusion.*—The courts should consider the testimony in an uncontested application for a divorce with the most painstaking and scrupulous care, and, if collusion or consent appears, directly or indirectly, should deny the relief sought.

Appeal from a decree of the Circuit Court of Rockingham county. Decree for defendant. Complainant appeals.

*Reversed.*

The opinion states the case.

*Chas. A. Hammer and John Paul,* for the appellant.

No appearance for the appellee.

SAUNDERS, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Rockingham county, denying the prayer of the plaintiff for a divorce *a vinculo matrimonii,* on the ground of wilful and long continued abandonment and desertion. There is no appearance for the defendant.

The evidence in the case is herewith reproduced in full:

"Depositions for complainant taken the 21st day of November, 1919, pursuant to notice.

"Present: The complainant, Mrs. Willie Dinsmore, in person, and by Chas. A. Hammer, Esq., her counsel.

"Mrs. Willie Dinsmore, introduced in her own behalf, being first duly sworn by the commissioner, deposed as follows:

"1Q. By Mr. Hammer: I am thirty-seven years of age, reside at Port Republic, Va., and I am the post-mistress at that place.

"2Q. When and to whom were you married?

"A. To Robert B. Dinsmore, March 23, 1901.

"3Q. Are you and your husband living together now?

"A. No, sir.

"4Q. How long has it been since you two lived together as man and wife?

"A. Twelve years ago.

"5Q. Where were you living at that time—the time of the separation?

"A. At Port Republic, in Rockingham county, Virginia.

"6Q. Where have you lived, Mrs. Dinsmore, for the two years immediately preceding the second Monday in February, 1919?

"A. In this county, at Port Republic.

"7Q. Where did you and your husband last live together as man and wife?

"A. Port Republic, Virginia; in Rockingham county.

"8Q. Were any children born of the marriage, and if so please give their names and ages?

"A. There were two born of the marriage; Virginia Dinsmore, who was born February 12, 1903, and Margaret Dinsmore who was born October 12, 1905.

"9Q. Mrs. Dinsmore, why is it that you and your husband are not living together?

"A. My husband left me without cause, and has failed to contribute anything to my or the children's support for all these years.

"10Q. When did he leave you, and give as nearly as you can what he said when he left you?

"A. He left me in the summer of 1912, and said that he did not intend to support me or live with me any longer.

"11Q. What had been your treatment of him prior to that time, good or bad?

"A. Good.

"12Q. I will ask you this question: Did you or did you not give your husband any cause for leaving you and your children?

"A. Absolutely none.

"13Q. Were you a person of financial means, or were either of you?

"A. Neither of us.

"14Q. Since he has left you, how have you and your children been maintained by you?

"A. After he left in the summer of 1907 I began teaching school at Port Republic, in September, and taught up until the time I was appointed postmistress in 1914.

"15Q. And you are now filling that position?

"A. I am now filling that position.

"16Q. Since your husband left you has he corresponded with you?

"A. Not at all.

"17Q. I wish you would tell the court something of the habits of your husband, was he or not a sober man?

"A. He was a very dissipated and disagreeable, and utterly worthless in every respect.

"18Q. When you say he was dissipated, in what respect do you mean that he was dissipated?

"A. I mean that he got drunk and staid drunk all the time, and that he did not half work. That is about as plain as I can put it.

"19Q. And you have been living at Port Republic since 1907?

"A. Yes, sir, I have.

"20Q. Has your husband contributed anything whatever to the support and maintenance of yourself and children since he left you?

"A. No, sir; nothing.

"21Q. You have your two children in your care?

"A. Yes, sir.

"And further this deponent saith not.

"Willie Dinsmore."

"John F. Miller, another witness introduced on behalf of the complainant, being first duly sworn by the commissioner, deposed as follows:

"1Q. Mr. Miller, state your age, residence and occupation?

"A. I am forty-nine; reside at Port Republic, in this county, and a merchant.

"2Q. Do you know Mrs. Willie Dinsmore and her husband, Robert B. Dinsmore?

"A. Yes, sir.

"3Q. How long have you known them?

"A. I have known them both for about twenty-two or twenty-three years.

"4Q. Where is she now living, with her two children?

"A. There at Port Republic.

"5Q. In Rockingham county?

"A. Yes, sir.

"6Q. Where is Mr. Dinsmore?

"A. At Waterford, Loudoun county, Va., I understand.

"7Q. How long since they have lived together as man and wife?

"A. Well, I am not able to state exactly, but it has been a number of years, though—ten or twelve years.

"8Q. Where did they last live together as man and wife?

"A. At Port Republic, Va. I do not know that they had a home there, but they lived as man and wife at Port Republic.

"9Q. Do you know any of the facts yourself dealing with the immediate cause of the separation; did you ever hear him say anything as to why he left his wife?

"A. No.

"10Q. Do you know what his habits were, Mr. Miller; if so, state what they were?

"A. Yes, sir. He was a very heavy drinker and was continually drinking. That is the way I would put it.

"11Q. How did he care for his wife and children and support them?

"A. While they were living in Port Republic, I do not think he contributed to their support at all.

"12Q. How were they supported?

"A. By Mrs. Dinsmore.

"13Q. How did she support herself and her two children?

"A. In the first place, she supported them by teaching school, and later as postmistress at Port Republic.

"14Q. Has she the children in her custody now, rearing and educating them?

"A. Yes, sir, she has.

"15Q. Is she a proper person to have the custody and control of those children, Mr. Miller?

"A. Yes, sir.

"16Q. What were his habits for industry while you knew him?

"A. They were not good.

"17Q. What was his business, if he had any employment while he was living with his wife?

"A. I don't know that he had any employment.

"18Q. Do you know whether Mrs. Willie Dinsmore gave her husband any cause for deserting or leaving her and their children?

"A. None whatsoever that I know of.

"19Q. Has he ever since the time that he left her been back to see his wife and children?

"A. Not since he left the last time. I think he left her several times.

"20Q. And when did he leave her the last time, did you say?

"A. As I said, I don't remember exactly, but about ten or twelve years ago.

"21Q. Has he ever been back to Port Republic since that time?

"A. Not to my knowledge.

"22Q. I believe you married Mrs. Dinsmore's sister?

"A. Yes, sir.

"And further this deponent saith not.

                                        "JOHN F. MILLER."

"John I. Harnsberger, another witness on behalf of the complainant, being first duly affirmed by the commissioner, deposed as follows:

"1Q. Mr. Harnsberger, state your age, residence and occupation?

"A. I am sixty years of age, reside at Port Republic in this county, and a farmer.

"2Q. Do you know Mrs. Willie Dinsmore, the complainant, and her husband, Robert B. Dinsmore?

"A. I do.

"3Q. How long have you known them?

"A. I knew them both before they were married. I have

known her all her life, practically, and I have known him since he first came to Port Republic, which was about twenty years ago, I expect.

"4Q. Are they now living together as man and wife?

"A. They are not.

"5Q. Where did they last live together as man and wife at the time he left her?

"A. There in Port Republic, when he left her.

"6Q. What do you know, if anything, as to their separation; the reasons for it?

"A. I do not know any reason except he was dissipated and no-account fellow. I know that. He did not support his wife and children, and never did anything for them. With his habits, I do not see how he could have supported her and them.

"7Q. Do you know whether he had ever done anything for the support of his wife and children since he left them?

"A. Not to my knowledge.

"8Q. You speak of his having been dissipated; in what respect was he dissipated?

"A. He was a drinking man. He would drink most anything he could get his hands on.

"9Q. How has Mrs. Dinsmore been supporting herself and her two children since her husband left her?

"A. For some years she taught school there at Port Republic, and a few years ago she was appointed postmistress there, which position she now holds.

"10Q. Is Mrs. Willie Dinsmore a proper person to have the care, control and custody of her two children?

"A. I think so.

"11Q. Is she or not an industrious person?

"A. Yes, sir, she is.

"By Commissioner:

"12Q. Were they living in Port Republic when he left her?

52

"A. Yes, sir.

"13Q. It has been stated here that that was in 1907, or about that time, is that correct?

"A. I do not know about the date, but it has been a good many years ago.  I would think about ten or perhaps twelve years ago.

"14Q. How long had he been living there at Port Republic before he left her?

"A. I don't know, exactly.  They had been living in West Virginia before they came to Port Republic, but I don't know exactly how long they were in Port Republic; they were there for some time.

"15Q. Mrs. Dinsmore is now living in Port Republic, is she not?

"A. Yes, sir.

"16Q. And has been living there since her husband left her in 1907, as stated?

"A. Yes, sir; ever since he left.

"And further this deponent saith not.

"JOHN I. HARNSBERGER."

Upon this testimony the trial court refused to award a divorce, and dismissed the plaintiff's bill.  The reasons for the court's action are given in a memorandum accompanying the decree.  From this memorandum it appears that in the judgment of the court below the instant case is controlled by the case of *Walker* v. *Walker,* decided by this court, and reported in 120 Va. 410, 91 S. E. 180, and that the evidence cited, *supra,* measured by the "wise standard established by *Walker* v. *Walker,*" does not "entitle the plaintiff to a divorce."

Each case of divorce must be decided upon the facts appearing in that case, the inquiry in such case being whether the evidence, fairly construed according to accepted principles, supports the allegations of the bill.

The provisions of the Code (Code 1919, sec. 5103) are as follows: "A divorce from the bond of matrimony may be decreed: * * * Where either party wilfully deserts or abandons the other for three years such divorce may be decreed to the party abandoned; * * ."

The allegation of the plaintiff's bill is that the husband, Robert B. Dinsmore, "did wilfully abandon and desert the complainant." As stated, *supra*, there is no appearance for the defendant, or evidence in his behalf. The sole question presented for decision is the determination of the sufficiency of the evidence submitted to establish the allegation of wilful abandonment and desertion.

This court has said in *Washington* v. *Washington,* 111 Va. 525, 69 S. E. 322, that "Wherever there is an actual breaking off of matrimonial cohabitation, combined with the intent to desert in the mind of the offender, in such case desertion is established, long continued absence without detaining cause being the most potent means of proof of the intent to desert."

No one can read the evidence in this case without being fully satisfied of the worthlessness of the husband, of the fact of the abandonment, and its lack of justification. The desertion took place some time in 1907, and has continued to the present time without any return on the part of the defendant, communication with his wife, offer of reconciliation, or tender of support to the family which he abandoned. It is true that the wife says in one portion of her deposition that her husband abandoned her in 1912, but this was evidently an inadvertence on her part, or a mistake of the stenographer. Later in her deposition the wife states that her husband left her in the summer of 1907. In another portion of her deposition, she states that it has been twelve years since she and the husband lived together as man and wife.

The other witnesses, without undertaking to fix the exact date of the abandonment, state that it was ten or twelve years ago. The depositions were taken in 1919, and if the abandonment occurred twelve years ago, the date of such abandonment is fixed at some point of time in 1907. Looking to the entire evidence on this point, and reasonably construing it, we have no doubt that the abandonment did take place in 1907, and not in 1912. Hence, the absence of the defendant in the instant case has been a long continued one.

There is absolutely no evidence of a "detaining cause." But long continued absence without detaining cause is not the only evidence of the husband's intent to desert his wife. According to the testimony of the wife, her consort abandoned her with the specific accompanying statement "that he did not intend to support her or live with her any longer." Looking to the opinion in the case of *Walker* v. *Walker, supra,* it does not appear that the wife made any statement of her intent at the time she left her husband, nor had her abandonment at the time the depositions were taken in that case continued for anything like the period established in the case in judgment. Summing up the evidence in the *Walker Case,* the court concluded that "a separation by mutual consent, or because of the fault of either of the parties, might as well be inferred from the evidence submitted, as desertion by the wife." A like criticism cannot be made of the evidence in the instant case.

[1] It is clearly shown that the husband was drunken and worthless, and without employment during the period that preceded the abandonment; that he failed to contribute to the support of his wife and children; that since the date of the last abandonment he has not returned or communicated with his wife, or contributed to the support of the wife and children; that he left stating that he "did not intend to support or live any longer with his wife." Further,

it appears that the conduct of the wife afforded no ground, or cause, for the husband's action.

According to the testimony of the witnesses, other than the complainant, the wife is a proper person to have the care of the children, is industrious and energetic, and for the past twelve years, alone and unaided, has supported herself and children by her own energy, industry and frugality.

Upon this state of facts, we have no hesitation in concluding that the plaintiff has established the charge of wilful desertion, and is entitled to a divorce *a vinculo matrimonii*, and the custody of the children. Indeed, we may say in the instant case, as this court said in *Johnson* v. *Johnson*, 117 Va. 504, 85 S. E. 475: "The uncontradicted evidence in this case abundantly shows that, without adequate cause, the defendant abandoned his wife, with the declared purpose of not returning to her; that during that time (twelve years in the instant case) he has not cohabited with her, has had no communication, has made no effort to have her resume marital relations; and has contributed nothing to her support. These facts constitute such proof of desertion, as entitle the plaintiff to a decree of divorce from the bond of matrimony."

The conclusion reached in the case in judgment is in no wise in conflict with the principles announced in the case of *Walker* v. *Walker, supra.* We fully agree with the statement of the opinion in that case, that "the policy of the law is against divorce by consent, and that if the sanctity of the marriage tie is to be preserved and divorces by consent prevented, full and satisfactory evidence should be required, so that the court may determine the legal questions involved from the facts presented, and a decree for an absolute divorce for desertion should not be granted, unless the evidence proves wilful desertion without justification or excuse."

No arbitrary rule is or can be established by the *Walker Case,* or any other case, as to the precise evidence in detail necessary to establish a charge of desertion. If the facts of the case under consideration establish the charge, however much those facts may differ in detail from the facts of another case, the requirements of the law are fully met.

In the case of *Isgett* v. *Isgett,* 126 Va. 599, 101 S. E. 788, the trial court, upon the authority of *Walker* v. *Walker,* refused to award a divorce. This court, reversing that decision, used the following language: "The circuit court denied the relief prayed upon the authority of *Walker* v. *Walker,* 120 Va. 410, 91 S. E. 180. We are of opinion, however, that the evidence sufficiently established the desertion, and that therefore the case is not controlled by the decision in *Walker* v. *Walker,* but belongs to the class of cases, of which *Lamb* v. *Lamb,* 126 Va. 256, 101 S. E. 223, and *Grim* v. *Grim,* 126 Va. 245, 101 S. E. 140, are illustrations."

[2] The courts should consider the testimony in an uncontested application for a divorce with the most painstaking and scrupulous care, and if collusion or consent appears, directly or indirectly, should deny the relief sought. There is nothing to indicate either consent or collusion in the instant case. The long continued absence of the husband, his statement made at the time of his departure that he did not intend to support his wife or live with her any longer, his silence for twelve years past, his utter failure to contribute to the support of either his wife or children, are inconsistent with any other conclusion than that of wilful and deliberate abandonment and desertion. The facts of some other case, of many other cases, may be insufficient to support a charge of desertion, or may be consistent with more than one conclusion, or inference, but the facts

of this case, in the view of this court, irrefutably establish wilful desertion without cause, and are consistent with that inference only.

In view of the conclusion announced, the decree of the Circuit Court of Rockingham county will be reversed, and the decree proper to have been entered in the first instance will be entered by this court.

*Reversed.*